Christopher Michael HACK,
Petitioner–Appellant,

v.

Frank ELO, Respondent–Appellee.

No. 00–1293.

United States Court of Appeals,
Sixth Circuit.

Feb. 5, 2002.

Before RYAN, BOGGS, and DAUGHTREY, Circuit Judges.

RYAN, Circuit Judge.

The petitioner, Christopher Michael Hack, appeals the district court's dismissal of his petition for a writ of *habeas corpus,* filed pursuant to 28 U.S.C. § 2254. For the reasons set forth below, we shall affirm the district court's order denying Hack's petition.

## I.

On November 12, 1993, a Michigan court convicted Hack on four counts of first degree criminal sexual conduct, pursuant to Mich. Comp. Laws § 750.520b(1)(a), and two counts of producing child sexually abusive material in violation of Mich. Comp. Laws § 750.145c(2) (West Supp.2001). As the trial court determined, Hack and several of his friends forced a three-year-old girl and her one-year-old cousin to engage in acts of oral sex while Hack and his friends videotaped the events. Hack filed a direct appeal to the Michigan Court of Appeals, which affirmed his conviction. *People v. Hack,* 219 Mich.App. 299, 556 N.W.2d 187 (Mich.Ct.App.1996). The Michigan Supreme Court denied leave to appeal. *People v. Hack,* 456 Mich. 884, 570 N.W.2d 658 (Mich.1997). Hack filed a petition for a writ of *habeas corpus* in the federal district court in 1998. The magistrate judge recommended that the district court deny Hack *habeas* relief, and the district court accepted the recommendation in a written opinion. Subsequent to that decision, the district court certified the following four issues for appeal:

1. Was Hack denied his right to due process because his convictions for criminal sexual conduct rested on two different and changing theories of guilt?
2. Did Hack's four convictions for criminal sexual conduct in the first degree subject him to double jeopardy because there were only two acts?
3. Did Hack's two convictions for producing child sexually abusive material subject him to double jeopardy because they resulted from one act of videotaping?
4. Was Hack's due process right to a fair and impartial trial violated because the state court improperly denied a change of venue?

## II.

### A. Standard of Review

*Habeas* relief may not be granted with respect to any claim adjudicated on the merits in a state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2) (West Supp. 2001). The federal courts must presume that all determinations of factual issues made by the state courts are correct unless the petitioner can rebut that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1) (West Supp.2001). We review a district court's legal conclusions in a *habeas* proceeding *de novo* and its factual findings for clear error. *Onifer v. Tyszkiewicz,* 255 F.3d 313, 315 (6th Cir.),

*cert. denied,* —— U.S. ——, 122 S.Ct. 292, 151 L.Ed.2d 216 (2001).

The phrases "contrary to" and "unreasonable application of" in § 2254(d)(1) each have discrete meaning. A state court's decision will be "contrary to" clearly established Supreme Court precedent if it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court "unreasonably applies" clearly established Supreme Court precedent when it correctly identifies the governing legal principle in the case, yet it unreasonably applies that principle to the facts of the defendant's case. *Id.* at 413, 120 S.Ct. 1495.

### B. Analysis

#### 1. Due Process

Hack actually makes two broad due process arguments under the guise of challenging the court's "shifting and alternating theories of guilt." First, he contends that based on a plain interpretation of § 750.520b(1)(a), his actions cannot be defined as criminal sexual conduct. Hack argues that he never penetrated the children personally, and absent penetration he is not guilty of criminal sexual conduct. Hack also contends that under an alternative theory of guilt–aiding and abetting minors in the commission of criminal sexual conduct–he cannot be guilty. Under Michigan law, children younger than the age of seven are incapable of committing criminal acts. In a confusing twist that seems to undermine this argument, however, Hack then notes that the language of the statute itself is not unconstitutionally vague; rather, he claims that the Michigan

Court of Appeals' retroactive expansion of it to include Hack's conduct is unconstitutional.

Only after addressing the argument above does Hack address his second contention, which was one of the issues certified for appeal. Hack argues that the "shifting theories of guilt," as represented by the opinions and orders of the trial court and the Michigan Court of Appeals, also amounted to a denial of due process.

Of particular relevance to the due process arguments is Michigan's criminal sexual conduct statute. That statute reads: "(1) A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists: (a) That other person is under 13 years of age." Mich. Comp. Laws § 750.520b(1)(a). " 'Sexual penetration' means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." Mich. Comp. Laws § 750.520a(m) (West Supp.2001).

" 'It is established that a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits.' " *City of Chicago v. Morales,* 527 U.S. 41, 56, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999) (quoting *Giaccio v. Pennsylvania,* 382 U.S. 399, 402–03, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966)). This fair warning, or notice, requirement "bars enforcement of 'a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.' " *United States v. Lanier,* 520 U.S. 259, 266, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997)

(quoting *Connally v. Gen. Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)).

As an initial matter, we need not address Hack's oft-repeated argument that he cannot be convicted under a theory of aiding and abetting because the children were incapable of committing any crime. Regardless of the merits of this argument, it is completely irrelevant. The Michigan Court of Appeals stated plainly that "defendant is guilty as a principal." *Hack,* 556 N.W.2d at 189. While it is true that the Michigan trial court held that it would not quash the information because Hack's liability could rest on *either* his role as the principal or one who aided and abetted, no other court has held that the theory of liability was unclear.

◼ Moreover, we share the district court's concern that Hack has not properly exhausted his due process argument in the state courts. *See Hack v. Elo,* No. 98–CV–72915–DT, 2000 WL 246596, at *2 n. 1 (E.D.Mich. Feb. 11, 2000) (unpublished disposition). In the state court, Hack argued that under a plain interpretation of the state statute he could not be convicted as a principal or as one who aided or abetted. *Hack,* 556 N.W.2d at 189–90. The court interpreted the statute and rejected Hack's argument. *Id.* This court will not interpret a state criminal statute to have a meaning different than that given by a state court. *Smith v. Sowders,* 848 F.2d 735, 739 (6th Cir.1988). Cognizant of that fact, Hack modified his plain-language argument when seeking federal court relief. Before the federal courts he has characterized his conviction as a violation of due process for lack of fair warning and impermissible expansion. Despite Hack's failure to properly raise this in the state courts, we address the substance of the argument, which, as we will demon-

strate, lacks merit. *See* 28 U.S.C. § 2254(b)(2) (West Supp.2001).

■ Turning to Hack's first argument, we find that the plain language of the statute provided notice, in a manner sufficient to comport with the Fourteenth Amendment's Due Process Clause, that Hack's acts constituted criminal sexual conduct. The statute defines "sexual penetration" as the intrusion of "any object into the genital or anal openings of another person's body." By this language, it is clear that the act of penetration can occur by means other than direct touching by the accused individual. *See* Mich. Comp. Laws § 750.520a(m) (West Supp.2001). When Hack forced a three-year-old girl to perform fellatio on a one-year-old boy, he impermissibly penetrated both children by using them as instruments to perform fellatio on one another. As the actor using children to commit sexual acts, he is directly culpable for sexually penetrating those children. The statute provided more than sufficient notice. In addition, the Michigan Court of Appeals' determination that section 750.520b(1)(a) criminalized Hack's behavior is not an impermissible expansion of the statute under *Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964). Here, Hack's behavior was plainly prohibited by the statute, and thus there was no expansion.

■ Hack's argument that the Michigan courts' "shifting interpretations" of the statute violated due process is similarly deficient. The plain teaching of Michigan law suggests that Hack could never have been reasonably confused about the theory under which the government proceeded. Michigan has long held that there is no distinction between liability as a principal and liability for aiding and abetting: "Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or pro-cures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense." Mich. Comp. Laws § 767.39. Thus, "[i]t is well settled that an aider and abettor may be indicted, tried, and on conviction punished as a principal and no denial of due process results from charging an aider and abettor as a principal." *People v. Hooper,* 50 Mich.App. 186, 212 N.W.2d 786, 788 (Mich.Ct.App.1973). When he went to trial for violation of section 750.520b(1)(a), Hack knew that under Michigan law he would be guilty if the jury found that he was either the principal or an individual who aided and abetted principals in the conduct of the crime. Therefore, the argument that there was any shifting theory of guilt, and that the shifting denied him notice of the charges against him, is meritless. The district court properly dismissed Hack's due process argument.

### 2. Double Jeopardy–Criminal Sexual Conduct

The next issue certified for appeal addresses Hack's contention that the trial court violated the Double Jeopardy Clause by convicting him of four counts of criminal sexual conduct. In short, Hack asserts that if a child is an object used to sexually penetrate another, then only one child is victimized by the act because the child acting as the "object" was not "penetrat[ed]." Hack concludes that because there were two acts of fellatio, at most, he can be convicted on only two counts. Prior to beginning our analysis, however, we again pause to note that Hack did not properly present this issue in Michigan courts. Nevertheless, we address it to dispose of it on the merits. *See* 28 U.S.C. § 2254(d)(2).

■ The Fifth Amendment to the United States Constitution holds that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy Clause was made applicable to the states through the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The Supreme Court has interpreted the Double Jeopardy Clause to " 'protect[ ] against multiple punishments for the same offense.' " *Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983) (quoting *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)). "Because the substantive power to prescribe crimes and determine punishments is vested with the legislature ..., the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Ohio v. Johnson,* 467 U.S. 493, 499, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984) (citation omitted). The interpretation of state statutes and legislative intent by state appellate courts is a matter of state law which is not reviewable in *habeas corpus. Mullaney v. Wilbur,* 421 U.S. 684, 691, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

Hack's double jeopardy argument is without merit. The Michigan appellate court has interpreted the legislative intent behind the criminal sexual conduct statute. The court determined that multiple convictions for forcing multiple children to engage in a single sexual act does not violate double jeopardy. In *People v. Wilson,* 196 Mich.App. 604, 493 N.W.2d 471 (Mich.Ct. App.1992), the defendant's conviction for criminal sexual conduct was based on sexual acts she forced two children to perform on one another. The panel held that the Michigan legislature intended to punish separately each act of criminal sexual penetration. *Id.* at 474. The court held that

"two acts of penetration that occurred at the same time are not for the 'same offense' and therefore no double jeopardy violation is shown." *Id.*

Hack's only argument is that the facts of *Wilson* differ from his. Hack argues that in *Wilson,* the defendant was guilty of criminal sexual conduct on a theory of aiding and abetting the children who engaged in the criminal sexual act. *Id.* at 473. That factual distinction is irrelevant. The court's analysis concerned two, simultaneous acts of penetration that the victims performed on one another. The court concluded that the acts were not the "same offense" under the Double Jeopardy Clause and that the adult forcing the children to engage in the acts could be convicted for each act of penetration the children suffered. *Id.* at 474. This is exactly the factual scenario at bar. Stated differently, for each of the two separate incidents of fellatio, there were two victims, and two criminal acts. Hack's double jeopardy argument fails.

### 3. Double Jeopardy–Producing Child Sexually Abusive Material

■ Hack contends that under the Double Jeopardy Clause, he could be convicted of only one count of producing child sexually abusive material because he committed only one act. Hack states that Mich. Comp. Laws § 750.145c(2) (West Supp. 2001) punishes only the number of videotapes produced. He contends that it was the intent of the legislature to punish the production of the tapes, and it is the occasion of producing the material that creates a unit of prosecution.

Michigan law provides:

A person who persuades, induces, entices, *coerces,* causes, or knowingly allows *a child to engage in a child sexually abusive activity for the purpose of*

*producing any child sexually abusive material,* or a person who arranges for, produces, makes, or finances, or a person who attempts or prepares or conspires to arrange for, produce, make, or finance any child sexually abusive activity or child sexually abusive material is guilty of a felony....

Mich. Comp. Laws § 750.145c(2) (West Supp.2001) (emphasis added). Child sexually abusive material is defined as: "[A] developed or undeveloped photograph, film, slide, electronic visual image, *computer diskette,* or sound recording of a child engaging in a listed sexual act...." Mich. Comp. Laws § 750.145c(1)(i) (West Supp. 2001) (emphasis in original).

The Michigan Court of Appeals addressed this argument in Hack's direct appeal. *Hack,* 556 N.W.2d at 191. Therefore, *habeas* relief is appropriate only if the state court reached a decision contrary to, or which involved an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1). As stated, the double jeopardy inquiry for a statute relies on the state legislature's intent, which, when determined by a state appellate court, is not reviewable by a federal court. *Johnson,* 467 U.S. at 499, 104 S.Ct. 2536; *Mullaney,* 421 U.S. at 691, 95 S.Ct. 1881. In Hack's case before the Michigan Court of Appeals, the court examined the statute's plain language to determine the legislative intent and held that the Michigan legislature "clearly provide[s] that a felony has been committed when a person induces one child to perform prohibited acts." *Hack,* 556 N.W.2d at 191. In doing so, it rejected Hack's assertion that the statute prohibits only the act of producing the "material." *Id.* In this case, it is undisputed that Hack coerced two children to engage in sexual acts that he videotaped. There is no double jeopardy violation and therefore the state court's determination is not contrary to, or an unreasonable application of, federal law.

### 4. Change of Venue

In his final argument, Hack contends that he was denied due process because many of the jurors at his trial had been exposed to considerable pretrial publicity from the earlier trials of his codefendants. As a result, he concludes, they could not remain impartial. He notes that, in total, 35 potential jurors were removed from the jury pool. Of those, 22 were removed for cause because they were prejudiced against Hack. Seventeen of the 22 had formed their strong prejudice against Hack after learning about the case from the newspaper. When 13 jurors were finally selected, eight had some familiarity with the case from newspaper accounts.

Hack also states that because most of the jurors were familiar with his case from pretrial publicity, he was entitled to a presumption of prejudice pursuant to *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). Hack admits that the trial judge did dismiss the jurors who expressed hostility toward him, but he asserts that the short lapse of time between the trials of the codefendants and his own trial is a "highly relevant fact" in determining prejudice.

■ "[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process." *Irvin,* 366 U.S. at 722, 81 S.Ct. 1639. Nonetheless, "[d]ue process does not require that a jury be totally ignorant of the case." *Kelly v. Withrow,* 25 F.3d 363, 368 (6th Cir.1994). In *United States v. Blanton,* 719 F.2d 815 (6th Cir.1983), this court held that it is sufficient to satisfy the requirements of the Due Process Clause if a juror who has

formed an impression as to guilt or innocence on the basis of pretrial publicity can lay that impression aside and render a verdict based solely on the evidence heard in court. *Id.* at 830.

The court will presume prejudice in a jury, and thus change venue, when the defendant is able to " 'show[ ] the actual existence,' albeit unexpressed, of such an opinion in the mind of the juror as will raise the presumption of partiality." ' *DeLisle v. Rivers,* 161 F.3d 370, 382 (6th Cir.1998) (*en banc* ) (quoting *Irvin,* 366 U.S. at 723, 81 S.Ct. 1639). The court is warranted in presuming prejudice when "the setting of the trial is inherently prejudicial." *Nevers v. Killinger,* 169 F.3d 352, 364 (6th Cir.1999) (internal quotations, brackets, and citation omitted), *abrogated on other grounds by Harris v. Stovall,* 212 F.3d 940 (6th Cir.2000), *cert. denied,* 532 U.S. 947, 121 S.Ct. 1415, 149 L.Ed.2d 356 (2001).

Hack was not denied his due process right to a fair trial by an impartial jury. There is absolutely no evidence to support the allegation that the state court's findings regarding the impartiality of the jury were contrary to, or an unreasonable application of, clearly established Supreme Court precedent. As the Michigan Court of Appeals found, the trial judge questioned jurors who had been exposed to pretrial publicity to determine whether they could hear the case impartially. *Hack,* 556 N.W.2d at 193. Those who noted that they had seen some pretrial publicity stated that they could remain impartial, and that is all due process requires. *See Blanton,* 719 F.2d at 830. Hack's calculations in his brief, which demonstrate the number of jurors dismissed for cause, only bolsters the state's argument that those who were partial were not seated on the jury.

Hack also fails to satisfy his burden of proving he was entitled to a presumption of prejudice, and thus a change of venue for his trial. Significantly, that presumption is only warranted if the defendant demonstrates the "actual existence" of partiality in some juror. As stated, in his briefs and in the record Hack is unable to point to that existence. For these reasons, Hack's due process challenge to the trial court's denial of his motion to change venue fails.

### III.

For the reasons discussed herein, the district court's denial of the writ of *habeas corpus* is AFFIRMED.